UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RODNEY KERNSTEIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 1:18cv226 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since September 6, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: rheumatoid arthritis, migraines, a history of asthma/bronchitis, fibromyalgia, obstructive sleep apnea, obesity, degenerative disc disease and arthrosis of the lumbar and cervical spines, torticollis, pain syndrome, sacroiliitis, epicondylitis and myalgia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undesigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should not climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop, bend, kneel, crouch, crawl, and climb ramps and stairs. He should avoid work within close proximity to very loud noises (level 5) such as a fire alarm or very bright flashing lights, such as strobes, more than occasionally. He could not work upon wet and slippery surfaces. He cannot work on uneven surfaces, other than the previously mentioned ramps and stairs. He is limited from concentrated exposure to excessive airborne particulate dusts, fumes, gases, and excessive heat, humidity, and cold such as when working outdoors or within a sawmill, boiler room, chemical plant, green house, refrigerator, or sewage plant.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 16, 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

> job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 6, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13 - 27 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on January 30, 2019. On March 11, 2019, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

4

disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erred by failing to find limitations for his migraine headaches in the RFC. Plaintiff claims that the ALJ improperly diminished the severity of Plaintiff's migraines because they were not documented by objective medical evidence. The ALJ found that Plaintiff's migraines were severe, and expressly noted his subjective complaints and the frequency with which they were reported in the treatment notes (Tr. 13, 20). However, while the record indicates that Plaintiff complained of migraines at different points throughout his treatment, there were also many instances where he denied headaches, or where he reported that medication was controlling his symptoms (Tr. 14-25). Notably, during the administrative hearing, Plaintiff stated that his back and hands were the primary conditions that kept him from working (Tr. 15, 52)

The record shows that the ALJ provided a thorough discussion of Plaintiff's treatment record (Tr. 17-25). In June 2014, three months prior to his alleged onset date, Plaintiff sought treatment for knee swelling and wrist pain, and reported headaches (Tr. 17, 407). His neurological examination was normal, and his provider did not note headaches as part of his overall assessment or treatment plan (Tr. 17, 411-12). By July and September 2014, Plaintiff did not complain of headaches (Tr. 17, 414, 418). During routine treatment for rheumatoid arthritis and fibromyalgia in November, he reported headaches and fatigue as part of his symptoms (Tr. 17, 425). His provider again treated his fibromyalgia and rheumatoid arthritis, but did not prescribe

5

specific treatment for his headaches (Tr. 17, 429). Plaintiff's treatment in December 2014 similarly focused on a low back injury and rheumatoid arthritis (Tr. 18, 842).

In January 2015, Plaintiff sought follow-up treatment for asthma and sleep apnea, and he expressly denied headaches (Tr. 18, 935-37). Similarly, he sought treatment for rheumatoid arthritis in April 2015, and again denied headaches (Tr. 19, 587). In May, Plaintiff was treated at an interventional pain center, and complained of low backache, stiff hands, and pain in his right elbow and neck (Tr. 19, 605). He also reported having two headaches per week lasting one hour, with associated symptoms of light and smell sensitivity, but his neurological examination was normal (Tr. 19, 606, 608). Plaintiff's provider diagnosed chronic migraine that was intractable (Tr. 19, 609). Plaintiff reported ongoing and frequent headaches in June and July 2015, but his neurological examinations were again normal (Tr. 20, 591, 593-94). In fact, his provider noted that his migraines were "ok" and controlled with medications (Tr. 595).

While receiving treatment in the emergency room for chest pain in October 2015, Plaintiff expressly denied headaches (Tr. 21, 527). He followed-up regarding asthma and sleep apnea that month, and although migraines were noted as a chronic problem, he did not specifically complain of symptoms or receive medication (Tr. 18, 948). Examination results were unchanged in early 2016 (Tr. 18, 952-55).

In February 2016, Plaintiff reported decreased migraines, at two instances per month lasting one hour, and in March 2016, Plaintiff reported zero migraine headaches per month (Tr. 21, 631, 641). He did not receive specific treatment for his migraines at either appointment (Tr. 21, 635, 645). Although Plaintiff's provider noted headaches as a symptom of his rheumatoid arthritis in July 2016, he also noted that his symptoms were "doing well" (Tr. 22,

6

817). Plaintiff reported in August 2016 that he was enjoying hobbies, had been shopping, and had better concentration and focus (Tr. 22, 81). By February 2017, he reported one headache per week lasting two hours, but his head examination was again negative (Tr. 22, 886, 889).

In his decision, the ALJ summarized all of this evidence, and noted that diagnostic testing and neurological findings did not support migraines and their frequency in the medical record (Tr. 20). The ALJ further explained the evaluation of objective medical evidence in the context of migraines, noting that SSA regulations require that a physical or mental impairment be established through medical signs or laboratory findings (Tr. 20 (citing 20 C.F.R. §§ 404.1521, 404.1502)). Moreover, the ALJ specifically discussed the fact that the agency clarified its existing policy in the new rules for evaluating medical evidence (Tr. 20). He noted that the new rules did not create an exception for migraines or mental impairments, and objective medical evidence is still required to establish the impairments (Tr. 20 (citing 82 FR 5848)).

Plaintiff argues that objective tests will not show the presence of migraines. Plaintiff contends that the ALJ should have included limitations in the RFC to account for migraines, such as the avoidance of migraine headache triggers (i.e., flashing lights and loud noises). A review of the ALJ's decision shows that it was not just the lack of objective tests establishing the existence of migraines that led to fewer limitations in the RFC, but also the fact that the record did not contain observations from Plaintiff's treating providers that he was in pain from migraines, chart notes reflecting ongoing, targeted migraine treatment, or any emergency room or urgent visits for migraine pain (Tr. 14-25). Rather, the record showed that Plaintiff at times denied headaches, or reported that they were infrequent or controlled with medications (see Tr. 14-25, 631, 635, 641, 645). As Plaintiff testified at the hearing, he primarily sought treatment for

other medical conditions, and his headaches were mentioned as a secondary symptom, with minimal specific treatment (see Tr. 22, 817). Therefore, the ALJ found that this evidence established Plaintiff's migraines as a severe impairment, but it did not indicate that they were disabling (Tr. 20).

Ultimately, despite the lack of anatomical, physiological or psychological abnormalities, or any laboratory findings establishing his migraines, in considering the record as a whole, the ALJ "incorporated some restrictions against possible triggers for headaches and migraines within the residual functional capacity" (Tr. 20). He specifically limited Plaintiff to light work with only occasional proximity to very loud noises or very bright flashing lights, and concentrated exposure to fumes and gases (Tr. 14). Plaintiff makes the conclusory assertion that those limitations were insufficient to account for his migraines, arguing that they were "pulled out of thin air". But those limitations directly correlated with migraine triggers that Plaintiff mentioned to his treatment providers (see Tr. 14, 19, 606 (describing light, noise, and smell sensitivity)).

Plaintiff also contends that additional limitations for photophobia (light sensitivity) and "off-task" behavior should have been included in the RFC. However, by 2016, Plaintiff reported that his migraine symptoms were controlled, and in 2017, he reported one weekly headache that was relieved by turning off the lights (Tr. 886). Given his improvement with treatment, the ALJ reasonably restricted Plaintiff to only occasional work around very bright flashing lights. Notably, Plaintiff has not demonstrated that additional restrictions were warranted. Likewise, Plaintiff does not cite to any record evidence showing that the RFC should have included a limitation on his ability to stay on task (Pl. Br. 10). In fact, Plaintiff reported in 2016 that he was enjoying hobbies and had better concentration and focus (Tr. 22, 81). Thus, Plaintiff has not met his burden of

8

showing that the ALJ's RFC finding was inadequate. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity.") (emphasis added).

Clearly, the ALJ carefully considered the entire medical record, and expressly noted Plaintiff's ongoing complaints of migraines (Tr. 14-25). He properly considered the lack of objective medical evidence, in conjunction with physical examinations and Plaintiff's subjective reports regarding his migraine symptoms (Tr. 14-25). The ALJ did not ignore or diminish Plaintiff's complaints of migraines. Rather, the ALJ found them severe, and accounted for them with specific limitations in the RFC (Tr. 13-14). His decision was supported by the opinions of State agency physicians and a consultative examiner, who noted Plaintiff's diagnosis of migraines, but found that the condition was not disabling (Tr. 22-23, 145-48, 153, 157-59, 473, 475). This court declines Plaintiff's invitation to reweigh the evidence, and finds that the ALJ's decision was supported by substantial evidence.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: May 2, 2019.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court